RECEIVED
SEP 2 4 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| ANDREW T. WALKER, ET AL. | CIVIL ACTION NO. 09-1727 |
| VERSUS | JUDGE DOHERTY |
| CHESAPEAKE LOUISIANA LP | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Pending before this Court is the Motion for Summary Judgment [Doc. 48] filed by defendant Chesapeake Louisiana LP ("Chesapeake"). Chesapeake seeks dismissal of all claims alleged by plaintiffs Andrew T. Walker, Alison W. Medinis, Caryn W. Donnelly, Claire W. Kettelkamp, James Tigner Walker, and Barbara Rigby Walker ("plaintiffs") against Chesapeake on grounds Chesapeake is entitled to judgment in its favor as a matter of law. Plaintiffs oppose the motion [Doc. 54], and Chesapeake has filed a reply brief. For the following reasons, Chesapeake's motion for summary judgment is GRANTED, and plaintiffs' claims against Chesapeake are DENIED AND DISMISSED WITH PREJUDICE.

I.  **Factual and Procedural Background**

Plaintiffs in this action are six individuals who granted six mineral leases in January and March 2008 in favor of defendant Chesapeake on six tracts of property located in Caddo Parish, Louisiana. Plaintiffs filed suit against Chesapeake in state court praying for dissolution of their leases based on Chesapeake's alleged violations of several provisions of the leases. The lawsuit was removed to this Court.

In their original petition, the plaintiffs allege Chesapeake breached two lease provisions.

First, plaintiffs allege Chesapeake breached Paragraph 22, entitled "Geophysical Information." Paragraph 22, which can be found in all of the subject leases, states:

> In the event Lessee [Chesapeake] acquires seismic permits on lands within one mile of the Leased Premises, Lessee agrees to negotiate in good faith to include both the Leased Premises and surrounding acreage so as to adequately provide fully imaged 3-D seismic coverage of the Leased Premises.

Plaintiffs allege Chesapeake acquired seismic permits on lands within one mile of the leased premises "but has failed or refused to negotiate in good faith with plaintiffs and surrounding mineral owners concerning inclusion of the Leased Premises as required by paragraph 22 of the Leases." Instead, plaintiff alleges Chesapeake "conditioned plaintiffs' permits on waiver by Lessors of the provisions set forth in Paragraph 22 of the leases and plan to include only plaintiffs' property in Section 7 in the seismic survey."

Second, plaintiff's allege Chesapeake breached the provisions identified by the parties as the "No Surface Operations" provisions. One of the leases at issue limits surface operations to a designated four-acre area, while the remaining leases "forbid surface operations without additional written consent" from plaintiffs. Plaintiffs allege Chesapeake "violated the surface operations provisions of the leases on numerous occasions" and continued to violate the provisions by entering and traveling over the leased property without notice and in such a way as to disrupt plaintiffs' use and enjoyment of the property. Specifically, plaintiff's allege Chesapeake trespassed on the plaintiffs' property by improperly accessing the property and by staking a location on the property on which Chesapeake had no right to surface operations.

In their original petition, plaintiffs seek cancellation of the subject leases in question, as well as all costs of the proceedings and attorney's fees.

On February 18, 2010, plaintiffs filed a Supplemental and Amended Complaint, wherein

plaintiffs allege Chesapeake breached Paragraph 21, contained in all of the subject leases, which requires Chesapeake to provide plaintiffs with any and all "well information" if and when Chesapeake drills into a well. The parties refer to Paragraph 21 as the "Well Data" or "Well Information" Clause.

In the instant motion for summary judgment, Chesapeake argues it is entitled to dismissal of all of the plaintiffs' claims on grounds the only remedy sought by the plaintiffs in this matter – lease cancellation/dissolution – is an extraordinary remedy to which plaintiffs are not entitled, for two reasons: (1) Chesapeake has rendered a substantial part of the performance under the subject leases, and (2) even assuming Chesapeake did breach the subject leases as alleged in the complaint, under Louisiana's doctrine of "judicial control," such breaches do not warrant lease dissolution.

## II.     Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

In their petition, plaintiffs pray for dissolution of all six leases. Additionally, in their response to Chesapeake's motion for summary judgment, plaintiffs acknowledge although they could have pursued the remedies of lease dissolution, specific performance of the lease terms, or damages, *plaintiffs chose to pursue only the remedy of lease dissolution.*[1]

In the instant motion, Chesapeake argues plaintiffs are not entitled to the sole remedy they

---

[1] In their response to Chesapeake's motion for summary judgment, plaintiffs concede they had "the right to pursue [lease] cancellation, performance or damages" and "chose cancellation." *See* plaintiffs' response to motion for summary judgment, Doc. 54, p. 2, fn. 1.

seek – lease dissolution – on two grounds: (1) Chesapeake has rendered a substantial part of the performance under the subject leases, and (2) even assuming Chesapeake did breach the subject leases as alleged in the complaint, under Louisiana's doctrine of "judicial control," such breaches do not warrant lease dissolution/cancellation. It is undisputed the lease agreements themselves do not contain provisions for lease cancellation or dissolution in the event of a breach of any provision. Thus, the sole issue before this Court is whether the plaintiffs are entitled to their sole chosen remedy of lease dissolution.

1. **The Lease Provisions**

    a. **"No Surface Operations" Clause**

Plaintiffs allege Chesepeake violated the "No Surface Operations" Clauses by being on plaintiffs' property and by staking a location on property on which Chesapeake had no right to surface operations, both of which involve Chesapeake's trespass on plaintiffs' property.[2] However, this Court notes despite the presence of survey crews on plaintiffs' property, plaintiff Andrew Walker testified the survey crews caused no physical damage to the plaintiffs' property.[3]

    b. **"Well Data" Clause**

The "Well Data" Clause requires Chesapeake to provide well data information to plaintiffs in the event a well is drilled. Plaintiffs contend Chesapeake violated this clause by failing to notify plaintiffs a well was being drilled, and failing to provide the well data as required. Paragraph 21 also allows plaintiffs to access a well site. Plaintiff Andrew Walker argues he has been prevented from

---

[2] Specifically, it appears plaintiffs are asserting trespass by survey crews who used ATV vehicles on plaintiffs' property.

[3] *See* Deposition of Andrew T. Walker, attached as Exhibit "4" to Chesapeake's motion for summary judgment., Doc. 48, at p. 111, ll. 9-23; p. 116, ll. 16-25; p. 117, ll. 1-3.

going to a well site in violation of Paragraph 21.

The dispute concerning well data arose after the instant lawsuit was filed. Plaintiffs notified Chesapeake they intended to purse claims for Chesapeake's breach of Paragraph 21, at which time Chesapeake argues it agreed to provide the well data in question to plaintiffs pursuant to the terms of the leases, which requires all parties to sign a "Data License Agreement." The Data Licensing Agreement is essentially a confidentiality agreement related to the well data provided. Chesapeake contends plaintiffs ignored Chesapeake's offer to provide this information and instead, filed an amended complaint in this lawsuit to include an allegation that Chesapeake breached Paragraph 21.

Thereafter, Chesapeake contends the plaintiffs informed Chesapeake they were prepared to execute the Data License Agreement, if Chesapeake would incorporate three proposed changes into the Agreement. Chesapeake responded it would agree to plaintiffs' proposed changes, if plaintiffs would dismiss all claims in this lawsuit which are based on Chesapeake's alleged breach of Paragraph 21. Chesapeake contends the plaintiffs refused to dismiss the foregoing claims and rejected Chesapeake's offer to execute the Data License Agreement.

Thus, the parties dispute which party placed an impermissible condition on Chesapeake's provision of the well data to plaintiffs. It is clear Chesapeake has attempted to provide the well data sought by plaintiffs under Paragraph 21, however, now that the dispute is in litigation, the parties have engaged in legal posturing and maneuvering, which apparently has prevented the information from being disseminated to plaintiffs.

  c. **"Geophysical Information" Clause**

Plaintiffs allege Chesapeake violated Paragraph 22 of the leases, which states:

In the event Lessee [Chesapeake] acquires seismic permits on lands within one mile of the Leased Premises, Lessee agrees to negotiate in good faith to include both the

> Leased Premises and surrounding acreage so as to adequately provide fully imaged 3-D seismic coverage of the Leased Premises.

Plaintiffs interpret Paragraph 22 to mean <u>if seismic permits are acquired within one mile</u> – as opposed to geophysical testing conducted within one mile – Chesapeake must negotiate in good faith to include plaintiffs' property in the testing. Plaintiffs allege Chesapeake <u>acquired seismic permits on lands within one mile of the leased premises</u> "but has failed or refused to negotiate in good faith with plaintiffs and surrounding mineral owners concerning inclusion of the Leased Premises as required by paragraph 22 of the Leases." Instead, plaintiff alleges Chesapeake "conditioned plaintiffs' permits on waiver by Lessors of the provisions set forth in Paragraph 22 of the leases and plan to include only plaintiffs' property in Section 7 in the seismic survey."

Chesapeake interprets Paragraph 22 to mean, <u>if Chesapeake conducts *geophysical testing* of property within one mile of plaintiffs' property</u>, then it must negotiate in good faith to include plaintiffs' property in the testing and provide plaintiffs with the resulting data. Under this interpretation, Chesapeake believes it has discretion to decide whether it will test acreage within one mile of plaintiffs' property. If Chesapeake does such testing, it must negotiate in good faith to include plaintiffs' property in the test; if Chesapeake does not do such testing, it has no obligation to tests plaintiffs' property.

Chesapeake contends plaintiffs' interpretation of the clause is unreasonable, because such an interpretation would require if Chesapeake acquired a single permit within one mile of plaintiffs' property, Chesapeake is obligated to include all of plaintiffs' property in a seismic test of the surrounding acreage, even if Chesapeake has not acquired all of the necessary permits on the surrounding acreage (which, Chesapeake argues, could be illegal). Thus, there is a dispute as to the proper interpretation of Paragraph 22 and whether Chesapeake violated the provision.

2. **Applicable Law**

While the parties spend a good deal of paper addressing issues that are not relevant to the Court's inquiry – including an inordinate amount of information concerning the parties' actions pre-contract execution and potential motivations for the plaintiffs' filing of the instant lawsuit – the parties have failed to adequately brief the applicable law and its application to the facts of this case.

In neither their original nor amended complaints do the plaintiffs identify under which law they are seeking the requested relief of lease dissolution, costs, and attorney's fees. Moreover, in its motion for summary judgment, Chesapeake sets forth provisions of both the Louisiana Mineral Code (without any citation thereto) and the Louisiana Civil Code, without explaining how the two interrelate or should be reconciled in adjudicating the issues before the Court.[4] For example, Chesapeake references Article 134 of the Louisiana Mineral Code, stating:

> Article 134, Louisiana Mineral Code, provides that, '[i]f a mineral lease is violated, an aggrieved party is entitled to any appropriate relief provided by law.' The comment to Article 134 explains that it is intended to provide as remedies for breach of a mineral lease, 'all those forms of relief which have been made available by the Civil Code.' Generally, under Louisiana law, an aggrieved obligee is entitled to damages caused by an obligor's beach. In addition, the aggrieved obligee is entitled to pursue on of two mutually exclusive remedies – specific performance or dissolution.[5]

Then, without explaining how or why one jumps from the Louisiana Mineral Code to the

---

[4] This Court's own research shows relationship between the Louisiana Civil Code and the Mineral Code. In the Mineral Code itself, La. Rev. Stat. §31:2, the framework for application of the Mineral Code is set forth, to wit:

> The provisions of this Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.

*See also Lacassane Company, Inc. v. Jardin Minerals Co.*, 847 So.2d 704, 710 (La. App. 3rd Cir. 2003).

[5] *See* Chesapeake's motion for summary judgment, Doc. 48, at p. 19.

Louisiana Civil Code,[6] Chesapeake references Article 1983 of the Louisiana Civil Code, which states:

> Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.

La. Civ. Code art. 1983 (West 2010). Chesapeake then references Article 2013 of the Louisiana Civil Code, which states:

> When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages.
>
> In an action involving judicial dissolution, the obligor who failed to perform may be granted, according to the circumstances, an additional time to perform.

La. Civ. Code art. 2013 (West 2010).

Chesapeake acknowledges the fact that an aggrieved obligee may be entitled to automatic lease dissolution if an applicable lease is subject to an express resolutory condition granting such a remedy in the event of a breach. *See, e.g., Stream Family Limited Partnership v. Marathon Oil Co.*, 27 So.3d 354, 358-59 (La. App. 3rd Cir. 2009). However, Chesapeake further argues under Article 2013, "the decision to allow the dissolution or not, or of granting further time or not, is left to the court, so that the dissolution of the contract never does become a matter of absolute right on the part of the obligee." *See Seals v. Sumrall*, 887 So.2d 91, 97 (La. App. 1st Cir. 2004), *citing Watson v. Feibel*, 71 So. 585, 591 (La. 1916).

---

[6] Beyond the passing reference to Article 134 of the Mineral Code, Chesapeake has failed to argue the Mineral Code contains no provisions that specifically address the factual scenario at issue in this case. Rather, Chesapeake merely cites to both the Mineral Code and the general contractual provisions of the Louisiana Civil Code in arguing plaintiffs are not entitled to lease dissolution. For their part, the plaintiffs have not shed any light on the foregoing in their response to the motion for summary judgment. Therefore, this Court can only assume the parties argue and agree there are no specific provisions of the Mineral Code that address the factual scenario at issue in this case, and that more general provisions of the Louisiana Civil Code govern this Court's determination.

In response, plaintiffs cite Article 2013 and state "[t]he argument here should begin and end with the first part of Art. 2013: When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract." Furthermore, plaintiffs contend Comment (b) to Article 2013 stands for the proposition that resolutory conditions are implied in every commutative contract, and a party's right to dissolution because of the other party's failure to perform arises from the contract itself, although not set forth in the form of a resolutory condition.

Plaintiffs' argument overreaches. Comment (b) states:

> (b) Under this Article, either party to a contract *may seek dissolution* upon the other's failure to perform. In C.C. Art. 2046 (1870), this remedy is predicated upon a resolutory condition implied in every commutative contract. This Article abandons both that rationale and that limitation, in accordance with modern doctrine. See Capitant, De la cause des obligations 326 (1923); 2 Litvinoff, Obligations 497-499 (1975); Weill, Droit civil--Les obligations 498 (1970). See also 6 Planiol et Ripert, Traité pratique de droit civil français 572 (2nd ed. Esmein 1952); Starck, Droit civil--Obligations 641-642 (1972). See generally 2 Litvinoff, Obligations 505-506 (1975). Nevertheless, under this Article a party's right to dissolution because of the other party's failure to perform arises from the contract itself, and to that extent it can be said to be implied in it, although not in the form of a resolutory condition.

La. Civ. Code art. 2013 cmt. (b) (West 2010).

Thus, although plaintiffs are correct that resolutory conditions are no longer necessary in order for a party to obtain dissolution of a lease for non-performance, plaintiffs' suggestion that such dissolution is automatic is misplaced. In Comment (d), the Louisiana legislature clarified:

> (c) *Under this Article, dissolution takes place upon judicial declaration.* Nevertheless, the obligee of an unperformed obligation may, according to the circumstances, regard the contract as dissolved before such a declaration. Thus, when one party has performed but the other has not, and the first party wants to dissolve the contract and recover his performance, the proper course of action for him to follow is to bring suit for judicial dissolution. Under different circumstances, however, such as when neither has performed and it is clear that one will not, the other may declare the contract dissolved in accordance with revised C.C. Art. 2016 (Rev.1984), *infra.*

*Id.* at cmt. (c) (emphasis added).

Thus, under Comment (c) to Article 2013, an obligor may only regard a contract as dissolved when the obligee has not performed at all. In such a situation, however, the aggrieved obligee must still bring a lawsuit for dissolution, which becomes an issue of discretion for the court.

That a contract may not be regarded as dissolved when *some* performance has taken place is reflected in Article 2014 of the Louisiana Civil Code, which states:

> A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee.

La. Civ. Code art. 2014 (West 2010).

The parties clearly dispute whether Chesapeake has substantially performed under the leases in question; Chesapeake argues it has paid over $100,000.00 to plaintiffs in bonus money in connection with the subject leases and has drilled the Walker 6-16-14 H-1 well on plaintiff's property at a cost of $11,863,400.00 and the Dixie Farm 7-16-14 H-1 well on lands utilized by plaintiffs' property at a cost of $7,010,334.00. Additionally, Chesapeake argues it has proposed the drilling of the Walker 6-16-14 H-2 well on plaintiffs' property, which is projected to cost approximately $6,500,000.00. In all, Chesapeake argues it has already spent approximately $20,000,000.00 developing plaintiffs' property and plans to spend an additional $6,500,000.00 in the near future, which constitutes substantial performance under the leases in question.

Plaintiffs argue Chesapeake ignores the second portion of Article 2014, which states a contract may not be dissolved when "the part not rendered <u>does not substantially impair the interest of the obligee</u>" (emphasis added). Plaintiffs contend the provisions of the leases that have been breached by Chesapeake were specifically negotiated provisions, and plaintiffs have been

substantially impaired by the breaches of those provisions.

Clearly a question of fact exists with respect to whether Chesapeake has rendered substantial performance under the subject leases, and therefore, summary judgment in favor of Chesapeake on the issue of dissolution of the leases under Article 2014 would be inappropriate. Indeed, substantial performance is a question of fact. *See E.B. Ludwig Steel Corp. v. C.J. Waddell Contractors, Inc.*, 534 So.2d 1364, 1368 (La. App. 5th Cir. 1988). Nevertheless, Chesapeake argues the ultimate issue of whether plaintiffs are entitled to dissolution of the leases is subject to the doctrine of "judicial control," and, as a matter of law pursuant to this doctrine, the plaintiffs are not entitled to dissolution of the leases.

It is well-settled cancellation of leases is not favored in Louisiana law. *Ergon, Inc. v. Allen, supra; Tullier v. Tanson Enterprises, Inc., supra; Stoltz v. McConnell,* 202 So.2d 451 (La.App. 4th Cir.1967), *writ denied,* 203 So.2d 559 (1967). Under the doctrine of "judicial control," Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him. *Martin Timber Co., Inc. v. Pegues,* 715 So.2d 728, 732-33 (La. App. 2nd Cir. 1998 ), *citing Ergon, Inc. v. Allen,* 593 So.2d 438 (La.App. 2nd Cir.1992) and *Lee v. Abernathy,* 19 So.2d 670 (La. App. 2nd Cir. 1944); *Tullier v. Tanson Enterprises, Inc.,* 359 So.2d 654 (La. App.1st Cir.1978), *rev'd on other grounds,* 367 So.2d 773 (La.1979). Cases which have applied judicial control of leases generally involve circumstances where a lessee has made a good faith error and acted reasonably to correct it. *See, e.g., Edwards v. Standard Oil Co., supra,* (rent was mailed on time, but was late due to faulty mail delivery); *Ergon, Inc. v. Allen, supra* (rent of $350 was not paid timely and recission of lease would cost lessee millions of dollars); *Atkinson v. Richeson,* 393 So.2d 801 (La. App. 2nd Cir.1981) (rent was 15 days

late because husband thought wife had paid the rent); *Baham v. Faust,* 333 So.2d 261 (La. App. 1st Cir.1976) (rent was eight days late and lease provided no place for payment); *Housing Authority of the City of Lake Charles v. Minor,* 355 So.2d 271 (La. App. 3rd Cir.1977), *writ denied,* 355 So.2d 1323 (La.1978) (rent was paid timely with third-party check from lessee's employer, but the check was returned for insufficient funds).

With respect to the doctrine of judicial control, plaintiffs suggest the "true interpretation" of the doctrine is as follows:

> Judicial control is an equitable doctrine by which the courts will deny cancellation of the lease ***when the lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact.***

*Western Sizzlin Corp. v. Greenway*, 821 So.2d 594, 601 (La. App. 2nd Cir. 2002) (emphasis added).

In response to Chesapeake's motion, plaintiffs focus on their argument that Chesapeake has breached the foregoing lease provisions, thereby conflating two separate and distinct inquiries, that is, whether Chesapeake *breached* the lease provisions, and, if so, whether *dissolution of the leases* is warranted as a consequence for those breaches. With respect to the issue of dissolution, plaintiffs argue the breaches in this case were not good faith errors; were not inadvertent; and were not minor. Rather, plaintiffs argue "[t]he breaches were deliberate and intentional and cannot be said to result from good faith mistakes." Therefore, plaintiffs argue the doctrine of judicial control is inapplicable.

It is unclear to this Court whether the concept of "judicial control" is a separate doctrine that is applicable in certain cases involving leases, or whether the concept of judicial control is merely reflective of the already-existing jurisprudential principle that dissolution of leases is a matter of discretion for the court. In either case, this Court quotes Magistrate Judge Hornsby, who wrote in an earlier Report and Recommendation to this Court in this matter,

> [c]ancellation of a mineral lease "obviously is a harsh remedy," so "the right to dissolve a mineral lease will be subject to judicial control according to the factual circumstances of each case ." *McDowell v. PG & E Resources Co.,* 658 So.2d 779, 784 (La.App. 2d Cir.1995). *See also Amoco Production Co. v. Texas Meridian Resources Exploration, Inc.,* 180 F.3d 664, 670 (5th Cir.1999) ("whether or not to dissolve a lease completely is subject to judicial discretion."). For dissolution to be appropriate, the lessor must be "undoubtedly entitled to such a cancellation" and "***the breach must be shown to be substantial***." *Dore Energy Corp. v. Prospective Investment and Trading Co., LTD.,* 570 F.3d 219, 229-30 (5th Cir.2009). *See also Taussig v. Goldking Properties Co.,* 495 So.2d 1008, 1018 (La.App. 3d Cir.1986). In discussing cancellation of a lease on grounds of imprudent administration, that the "***dereliction of duty must be of a <u>substantial nature</u> and <u>cause injury</u> to the lessor***." *Simmons v. Pure Oil Company,* 124 So.2d 161 (La.App. 2d Cir.1960), *affirmed,* 241 La. 592, 129 So.2d 786 (1961).

*Walker v. Chesapeake Louisiana, LP,* 2010 WL 1251717, 3 (W.D. La. 2010 (emphasis added).

This Court will *assume*, for purposes of this motion only, that Chesapeake did, indeed, breach the lease provisions as alleged by plaintiffs. Therefore, the sole question before this Court is whether the extreme and harsh remedy of lease dissolution is available to plaintiffs as an available remedy. In light of its discretion with respect to the issue of lease dissolution, this Court has reviewed the jurisprudence addressing the issue.

In *Amoco Production Co. v. Texas Meridian Resources Exploration, Inc.,* 180 F.3d 664 (5th Cir. 1999), the trial court canceled a lease after the lessee drilled a well in a restricted area, where the lease expressly provided for lease cancellation as a remedy for breach of the lease. On appeal, the Fifth Circuit confirmed "[w]hether or not to dissolve a lease completely is subject to judicial discretion." *Amoco,* 188 F.3d at 670, *citing Publicker Chem. Corp. v. Belcher Oil Co.,* 792 F.2d 482 (5th Cir. 1986). The Fifth Circuit held it was not an abuse of the trial court's discretion to cancel the lease where the trial court based its ruling on the fact that the lease itself specifically provided for

-15-

lease cancellation as a remedy for a breach. *Id.* at 670.[7]

In *Fontenot v. Sunray Mid-Continent Oil Co.*, 197 So.2d 715, 718 (La. App. 3rd Cir. 1967), the trial court held a mineral lessee's unjustified failure to pay a lessor, who was an illiterate farmer, his mineral royalties for thirty months warranted lease dissolution under jurisprudence providing the failure to pay production royalties under a mineral lease for any appreciable length of time, without justification, entitles the lessor to cancellation of the lease without first putting the lessee in formal default. On appeal, the Louisiana Third Circuit Court of Appeals affirmed. *Fontenot*, 197 So.2d at 718.

In the instant case, this Court concludes the alleged breaches at issue – even if assumed for purposes of this motion – are not so substantial and damaging to the plaintiffs to warrant the harsh remedy selected by plaintiffs, that of lease dissolution. With respect to the allegations of trespass, this Court notes plaintiffs have acknowledged the alleged trespass by ATV vehicles on plaintiffs' property has caused no physical damage to plaintiffs' property.[8] Under these circumstances, this Court concludes the alleged trespass does not warrant lease dissolution.[9]

---

[7] This Court concludes the recent Fifth Circuit case of *Rathborne Land Company, LLC v. Ascent Energy, Inc.*, 610 F.3d 249 (5th Cir. 2010), cited by Chesapeake as an example of substantial harm justifying lease dissolution, does not shed much light on the issue. In *Rathborne*, an action for lease cancellation and damages based on a lessee failure's to produce a mineral lease in paying quantities, the district court noted judicial demand was made for lease cancellation, but then stated the lease "terminated" because of the lessee's failure to produce in paying quantities, and damages were awarded. *See Rathborne*, 2008WL 5427751 at 6. This apparent "termination" – or cancellation – was not appealed *per se*; rather, on appeal, the lessee argued the lessor's claims for breach of the lease should have been dismissed because the lessor did not satisfy Louisiana's notice requirements prior to bringing suit. Also on appeal, the lessee raised several objections concerning the propriety of the damages awarded. Thus, the Fifth Circuit was not directly confronted with – and did not directly address – whether it was proper, under the facts of that case, for the district court to conclude the lease was "terminated," or canceled. *See Rathborne*, 610 F.3d at 253-54.

[8] *See* Deposition of Andrew T. Walker, attached as Exhibit "4" to Chesapeake's motion for summary judgment., Doc. 48, at p. 111, ll. 9-23; p. 116, ll. 16-25; p. 117, ll. 1-3.

[9] This Court acknowledges the plaintiffs' argument that they need not show actual damage resulting from a the tort of trespass in order to recover damages. While it is true "[d]amages for dispossession are regarded as an award of compensatory damages for violation of a recognized property right and are not confined to proof of actual

With respect to the issue of the well data, this Court notes as soon as Chesapeake was informed by plaintiffs they intended to seek redress for violation of Paragraph 21, Chesapeake immediately attempted to provide plaintiffs with the well data plaintiffs seek. However, at that time, the legal process had begun, and both parties appear to have attempted to use the legal proceedings as leverage in their negotiations concerning the Data Licensing Agreement. Regardless, Chesapeake made an attempt to cure any violation of Paragraph 21, and this Court concludes any action for breach of Paragraph 21 from the time Chesapeake first failed to provide the well data to plaintiffs to the time Chesapeake attempted to provide the information does not warrant the harsh, unfavored, remedy of dissolution of the subject leases.

Finally, this Court addresses the "Geophysical Information" Clause. Clearly, the parties dispute the proper interpretation of this clause and whether Chesapeake breached the provision. However, even if this Court were to assume, for purposes of this motion only, that Chesapeake *did*, in fact, breach this provision, this Court concludes Chesapeake has presented a reasonable defense to plaintiffs' allegation of breach. The Louisiana Supreme Court has held where there are grounds for "honest doubt" as to the rights of the parties within a lease agreement, the Supreme Court "has not, and will not, penalize a litigant lessee by dissolving a lease held technically in default when there is a bona fide defense." *See Rudnick v. Union Producing Co.*, 25 So.2d 906, 908 (La. 1946) (denying plaintiff lessor's request for cancellation of lease where there was a legitimate dispute between lessors and lessee over interpretation of clause in lease).

Furthermore, this Court notes the instant case is not one involving claims that Chesapeake

---

pecuniary loss," *Britt Builders, Inc. v. Brister*, 618 So.2d 899, 903 (La. App. 1st Cir.,1993), *citing Owens v. Smith*, 541 So.2d 950, 955 (La. App. 2nd Cir.1989), this Court notes it was the decision of the plaintiffs to seek the remedy of lease dissolution only, and not damages, for all alleged breaches of the subject leases. Therefore, where plaintiffs have not chosen to pursue damages, this Court must consider only whether lease dissolution is an appropriate remedy for the alleged trespass onto plaintiffs' property.

has refused to develop known mineral-producing formations or otherwise failed to act as a prudent operator. Indeed, Chesapeake has invested approximately $20 million into the plaintiffs' properties, and plans to invest approximately $6,5000,000.00 more in the near future. Under these circumstances, this Court concludes even if Chesapeake breached the "Geophysical Information" Clause, such breach is not so substantial as to justify lease dissolution under the facts and circumstances of this case.

In sum, this Court has discretion to determine whether the harsh remedy of lease cancellation is an available remedy for breach of the mineral leases in question. Under the circumstances of this case, this Court concludes even if the Court were to assume Chesapeake breached the lease provisions as alleged by plaintiffs, the factual circumstances of this case – on their face – do not demonstrate such substantial harm and injury to the plaintiffs that this Court would exercise its discretion to dissolve or cancel the subject leases.

### III. Attorney's Fees

In its motion, Chesapeake does not address the issue of plaintiffs' entitlement to attorneys' fees as a separate remedy in the event this Court concludes the remedy of lease dissolution is not available. Nevertheless, Chesapeake seeks dismissal of all of plaintiffs' claims, therefore, this Court must address the issue of plaintiffs' right to attorneys' fees in light of the Court's prior ruling that the plaintiffs are not entitled to dissolution of the leases.

Neither party has identified the source of plaintiffs' claim for attorneys' fees. However, this Court notes Article 209 of the Mineral Code states:

**§ 209. Applicability to demand for dissolution of mineral lease**

The right to secure damages and attorney's fees under Article 207 is applicable also to a demand for dissolution of a mineral lease for failure to comply with its obligations.

La. Rev. Stat. §31:209 (West 2010). In *Goodrich v. Exxon Co., USA*, 608 So.2d 1019, 1032 (La.App. 3rd Cir.1992), an action brought for partial cancellation of a mineral law, the Louisiana Third Circuit Court of Appeals upheld the trial court's award of attorneys' fees, noting:

> Where partial cancellation is sought and is granted less and except certain unitized acreage or retention acreage, attorney's fees are properly awarded. *Goodrich v. Exxon Corp.*, 642 F.Supp. 150 (W.D.La.1986); *Wier,* supra. Accordingly, we find no error in the trial judge's decision to award attorney's fees to the plaintiffs.

Goodrich involved a claim for attorney's fees pursuant to Article 209 of the Louisiana Mineral Code. In *Fontenot v. Sunray Mid-Continent Oil Co.*, 197 So.2d 715, 722-23 (La. App. 3rd Cir. 1967), an analogous ruling was made on a claim for attorney's fees under La. Rev. Stat. §30:102.[10] In *Fontenot*, the court held where a plaintiff-lessor sued for the *entire* cancellation of a lease but failed to assert an alternative demand for partial cancellation, and the court ordered only partial cancellation of the lease, plaintiff-lessor was not entitled to attorney's fees under La. Rev. Stat. §31:102. The court stated:

> Under the jurisprudence, it seems that the attorney's fees should not be allowed because the lessor does not obtain an entire cancellation of the lease under our amended decree. *Where a lessor demands full cancellation of a lease and, upon suing, is granted only a partial cancellation, he is not entitled to attorney's fees under LSA-R.S. 30:102.* Leaderbrand & Hardy v. Shallow Oil Co., 234 La. 796, 101 So.2d 673; Bailey v. Meadows, La.App. 2 Cir., 130 So.2d 501; 19 La.L.Rev. 328. (These cases note that if, however, the lessor's demand is for only a partial cancellation, and he is granted the entire relief which he seeks, he is entitled to attorney's fees. Nunley v. Shell Oil Co., 229 La. 349, 86 So.2d 62; Wier v. Grubb,

---

[10] La. Rev. Stat. §30:102 states:

> Within ninety days after the expiration of:
>
> (1) Production under a mineral lease previously maintained by production and
>
> (2) All other rights to maintain that lease,
> the lessee or his assigns shall notify the lessor or his representative that the lease has terminated, unless such notification is already provided in the lease.

La. Rv. Stat. §30:102 (West 2010).

-19-

228 La. 254, 82 So.2d 1; 19 La.L.Rev. 328.).

*Fontenot*, 197 So. 2d at 722 (emphasis added).

This Court concludes the *Goodrich* and *Fontenot* cases stand for the proposition that, if a plaintiff-lessor seeks full cancellation of a lease and the Court concludes no cancellation of the lease is warranted, attorneys' fees should not be granted. Accordingly, as the Court has denied the plaintiffs' requested remedy of full dissolution of the subject leases, this Court concludes the plaintiffs are not entitled to attorney's fees in this matter.

### IV. Conclusion

Considering the foregoing, this Court concludes plaintiffs are not entitled to the remedies of dissolution of the subject leases or attorney's fees as a matter of law. Accordingly, IT IS ORDERED that Motion for Summary Judgment [Doc. 48] is GRANTED, and plaintiffs' claims against Chesapeake are DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, ~~Louisiana, this~~ 24 day of September, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE